# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF COLUMBIA

|  |  |
|---|---|
| UNITED STATES OF AMERICA | : <br> : <br> : No. 1:21-cr-00694-TNM <br> : |
| v. | : <br> : |
| BRANDON PRENZLIN, | : <br> : |
| *Defendant*. | : <br> : |

## BRANDON PRENZLIN'S SENTENCING MEMORANDUM

Defendant, Brandon Prenzlin, by and through his undersigned counsel, submits his Memorandum in support of his sentencing pursuant to 18 U.S.C. § 3553.

**I.  Introduction**

On January 6, 2021, Brandon Prenzlin walked into the United States Capitol. He entered through an open door. He realized he should not be there, and left, on his own, approximately 3 and a half minutes later. In the brief, few minutes that he entered he did not break, damage, or steal any property; hurt, injure, accost, or threaten law enforcement (or anyone else); go into any private office space, or even proceed outside of the hallway that he entered. Mr. Prenzlin was not involved in planning or leading any of the activities that the crowd was engaged in on January 6, 2021, nor was he associated with any of the groups reported in the media to have been responsible for certain aspects of what occurred that day.

Mr. Prenzlin knows that, notwithstanding these facts, his mere brief entry into the Capitol played a role in the events that transpired. He is a young man, who made a mistake. Mr. Prenzlin cannot change the past, but can only learn from it, and work to live a life going forward worthy of forgiveness. If he could do it all over again, he would not have entered the Capitol that day. Mr.

Prenzlin is extremely remorseful for his own conduct, and for those injured and the damage that occurred that day. Mr. Prenzlin's sincere remorse is not measured by his words, but rather confirmed by his actions – he realized he should not have entered the Capitol with the crowd, and when law enforcement directed he and others to leave, he did so. After he was charged, Mr. Prenzlin waived his right to a preliminary hearing and agreed to toll time under the Speedy Trial Act. Mr. Prenzlin met with the FBI and permitted the FBI to search his electronic devices.

In our country, we judge a man by *his* actions alone, not those of others; we evaluate one day in his life, while also considering all of the other years in his life; we reward those who sincerely accept full responsibility for their actions. Values that separate this country from so many other countries; values that support a sentence of probation in this case.

## II.     Background and Facts Concerning the Offense

As set forth in his Statement of Offense, Mr. Prenzlin was, at the time of the offence, a resident of Arlington, Virginia, who worked in the District. He attended the "Stop the Steal" rally and then marched with other protestors to the Capitol. He approached the Capitol building on its the east side, but did not immediately enter as he observed a law enforcement presence guarding the perimeter of the restricted area. Approximately 20 minutes after his arrival on the east side of the Capitol grounds, the defendant saw rioters overwhelm law enforcement and breach the barriers blocking the East Plaza of the Capitol. Sometime after that, curious about what was going on inside the Capitol, he entered the U.S. Capitol building through the Upper House Door on the southeast side of the building at approximately 2:51 p.m. The door was open at the time he entered, and no law enforcement was present to direct individuals not to enter. Mr. Prenzlin walked down a corridor to the left of the Upper House Door where he observed a group of law enforcement officers from the Metropolitan Police Department (MPD) arrive. The MPD officers arranged themselves in a formation. When directed

by law enforcement to leave, Mr. Prenzlin did so. Mr. Prenzlin remained in the building for approximately 3 minutes and 35 seconds before exiting out the same door that he entered. Because of the short duration in which Mr. Prenzlin was inside the Capitol, we are submitting to the Court a DVD of that video.

The Government has also made much of its view of Mr. Prenzlin's subsequent interview with the FBI. Therein, Mr. Prenzlin acknowledges going into the Capitol and identifies exactly where he went. Initially, Mr. Prenzlin is asked if he went in the Capitol [starting at approximately timestamp 11:00:00 on the channel 3 video to approximately timestamp 11:04:30], he responds "no" twice, and then tells FBI agents he went up the steps, through the door, went in approximately 20 feet. Discussion occurs between him and the FBI wherein he suggests that he thought by Capitol the FBI was referring to the main portion of the building and not an entrance hallway. There is then a subsequent clarifying discussion by the FBI about what they meant by "Capitol." Because this is also less than 5 minutes, we are submitting this to Chambers as well on the same DVD.

The Government's charging decision in this case reflected the reality and scope of Mr. Prenzlin's participation in the events of January 6, 2021: he was not an organizer or fomenter of the events of January 6, 2021, he did not force entry into the Capitol, he did not destroy or steal property within the Capitol, he did not enter sensitive or private areas of the Capitol, he did not threaten or injure law enforcement within the Capitol.

Ultimately, Mr. Prenzlin plead guilty to one misdemeanor charge of 40 U.S.C. § 5104(e)(2)(G), which is punishable up to 6 months imprisonment and a $5,000 fine.

Mr. Prenzlin did not force his way past law enforcement, and, after encountering law enforcement in that hallway, left the Capitol. Mr. Prenzlin did not break, damage, or steal any property; hurt, injure, accost, or threaten law enforcement (or anyone else); go into any private office

space, or proceed to the well of the House or the Senate. Mr. Prenzlin was not involved in any planning or leading any of the activities that the crowd was engaged in on January 6, 2021, nor was he associated with any of the groups reported in the media to have been associated with certain aspects of what occurred that day. He was, in short, following the crowd.

We offer these facts not as excuses, because there are no excuses for the violation of law that occurred that day, but rather and solely to place into context Mr. Prenzlin's activities on January 6, 2021, including for comparison purposes with others who did engage in those activities that day, and for purposes of weighing his activities under comparator factors that the Government has set forth in other sentencing memoranda, and which, we expect, they will set forth in its sentencing memoranda in this matter.

### III.    Facts Concerning Mr. Prenzlin

Mr. Prenzlin, age 26, is unmarried, but gainfully employed. He was arrested and served one night in detention related to the charges. (PSI, Doc. 27 at p. 2). He lives, currently, with his father, who suffers from military-service related PTSD. *Id.* at p.9-10, ¶¶ 39, 43, 45, 51. He suffers from diabetes, requiring intermittent medical care. *Id.* at pp. 9-10, ¶¶ 40, 44, 48. As a result of these charges in this matter, he lost his employment at the time, forcing him to find other employment. *Id.* at p.11, ¶ 57.

### IV.    Law and Argument

Mr. Prenzlin now faces a sentencing on a single count of 40 U.S.C. § 5104(e)(2)(G). As noted by the plea agreement and the U.S. Probation Office, the defendant faces up to six months of imprisonment and a fine of up to $5,000. As this offense is a Class B Misdemeanor, the Sentencing Guidelines do not apply to it. 18 U.S.C. § 3559; U.S.S.G. §1B1.9.

Pursuant to 18 U.S.C. 3553 (and specifically those portions of it that are applicable to this misdemeanor, non-guideline sentence), factors this Court is to consider in imposing the sentence, which should be sufficient, but not greater than necessary, to comply with the purposes of sentencing are:

(1) the nature and circumstances of the offense and the history and characteristics of the defendant;

(2) the need for the sentence imposed—

(A) to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense;

(B) to afford adequate deterrence to criminal conduct;

(C) to protect the public from further crimes of the defendant; and

(D) to provide the defendant with needed educational or vocational training, medical care, or other correctional treatment in the most effective manner;

(3) the kinds of sentences available;

…

(6) the need to avoid unwarranted sentence disparities among defendants with similar records who have been found guilty of similar conduct; and

(7) the need to provide restitution to any victims of the offense.

### A.     The Nature and Circumstances of the Offense

In various sentencing memoranda, concerning the January 6, 2021 Capitol cases, the United States Attorney has recognized that not all actors are equal in terms of culpability, and the Government has systemically been setting forth factors for District Courts to consider in relation to January 6, 2021 sentences,[1] including: (1) whether, when, and how the defendant entered the Capitol building; (2) whether the defendant engaged in any violence or incited violence; (3) whether the defendant engaged in any acts of destruction; (4) the defendant's reaction to acts of violence or

---

[1] *See*, *e.g.*, *United States v. Reeder*, 1:21-cr-166, Government Sentencing Memoranda at DE#26 at pp. 6-7.

destruction; (5) whether during or after the riot, the defendant destroyed evidence; (6) the length of the defendant's time inside of the building, and exactly where the defendant traveled; (7) the defendant's statements in person or on social media; (8) whether the defendant cooperated with, or ignored, law enforcement; and (9) whether the defendant otherwise exhibited evidence of remorse or contrition.  We submit that two additional factors also should be considered: (10) whether the defendant was involved with planning or coercing the events of January 6, 2021;[2] and (11) whether the defendant timely offered to accept responsibility for his or her involvement and offered to enter a plea of guilty at a time that would have avoided the use of limited judicial, investigative, and prosecutorial resources.[3]

Defendant Brandon Prenzlin entered the through the Upper House Door on the southeast side of the building, and did not force entry.  This factor weighs in favor of the Defendant.[4]  Mr. Prenzlin neither engaged in, nor incited violence, nor did he encourage, promote, or otherwise tolerate any violence, which shows both the third and fourth factors also weigh in his favor.  Mr. Prenzlin did not destroy any evidence, and, in fact, fully cooperated with the Government law enforcement to provide all evidence in his possession upon his first contact with the FBI and consented to a search of his phone, even though he was under no legal obligation to do so.  Again, this fifth factor weighs strongly in his favor.  Mr. Prenzlin was in the Capitol a limited period of time – under four minutes – perhaps

---

[2] The Government has itself pointed to this as a relevant factor, *see*, *e.g. United States v. Morgan*, 1:21-cr-00164 at D.E. 22, p. 6.

[3] *See*, *e.g.*, *United States v. Bustle*, 1:21-cr-238, Government Sentencing Memoranda, at D.E. 38 at p. 6 ("The government also notes that from the outset, through his attorney, Joshua Bustle expressed a desire to plead guilty, acknowledge his conduct, and promptly resolve his case. When recommending an appropriate sentence, the government gives *significant* weight to the defendant's early resolution of this case") (emphasis added).

[4] *See*, *e.g.*, *United States v. Bustle*, 1:21-cr-238, Government Sentencing Memoranda, at D.E. 38.

one of the shortest periods of time of anyone charged, and he did not travel to or enter any rooms or offices in the Capitol, the Capitol Rotunda, or the Senate or House Chamber, which weighs in his favor.[5]

The Defendant here made no statements on social media, and none to or in traditional media, also weighing in his favor. In terms of cooperation with law enforcement, Mr. Prenzlin voluntarily gave an interview and voluntarily consented to a search of his phone.

Mr. Prenzlin was not involved with planning or coercing the events of January 6, 2021. But, as to the final factor the Court should consider that Mr. Prenzlin accepted responsibility and has plead guilty. The Government has elsewhere, in another January 6, 2021 case, acknowledged that this is entitled to "significant weight."[6]

### B. The History and Characteristics of the Defendant

As set forth in the PSR, Brandon Prenzlin's criminal history is limited to a speeding offense. If the Sentencing Guidelines did apply to his offense of conviction, he would have no criminal history points. USSG § 4A1.2(c)(2). Accordingly, he would be in Criminal History Category I. USSG §§ 4A1.1, 5A. Mr. Prenzlin holds stable employment. This factor supports a more lenient sentence.

One of the considerations that should not be lost on the court as to Mr. Prenzlin is that his arrest resulted in the loss of long-term employment and forced him to move back to Ohio. We have attached several letters attesting to Mr. Prenzlin's character from people who know him.

As an aside, Mr. Prenzlin was booked, and jailed overnight, in the District of Columbia, after being confronted at the D.C. airport. As the Court is considering a sentence in this matter, he should be credited with that night in jail.

---

[5] *See United States v. Morgan*, 1:21-cr-00164 at D.E. 22, p. 6 (Government discussion of the factor at issue and questioning whether the Defendant entered these areas).

[6] *United States v. Bustle*, 1:21-cr-238, Government Sentencing Memoranda, at D.E. 38 at p. 6.

### C.   The Need for the Sentence Imposed to Reflect the Seriousness of the Offense and Promote Respect for the Law

The events of January 6, 2021 were both serious, and tragic. And yet, as reflected above, not every actor that day has equal culpability. Is it appropriate to treat those who enter and then leave, the same as those who entered and stole or damaged property, those who organized and incited others to act, those who went into sensitive or private areas, or even worse, those who threatened or injured law enforcement? To ask these questions is to answer them. The appropriate consideration under this statutory factor is **not** whether the events of January 6, 2021 were serious (because there is no dispute that they were). The appropriate consideration instead is to weigh and judge *each Defendant's* activities and involvement in the events of that day, and we submit that consideration of that conduct relative to the factors set forth above, and articulated by the Government in other sentencing memoranda related to January 6, 2021 cases, must be considered in that regard.

Over 700 Defendants have been charged in connection with the events of January 6, 2021. Some with felonies. Some with misdemeanors. Each of these cases involves a wide range of conduct, both before, during, and after January 6, 2021 by the particular Defendant. Each of these cases should be judged based on the Defendant's conduct, and not the conduct of others.

Given all of these factors, a non-custodial sentence is appropriate here.

### D.   Adequate Deterrence (Specific and General)

Deterrence encompasses two goals: general deterrence, or the need to deter crime generally, and specific deterrence, or the need to protect the public from further crimes by this defendant. 18 U.S.C. § 3553(a)(2)(B-C); *United States v. Russell*, 600 F.3d 631, 637 (D.C. Cir. 2010).

Specific deterrence is obtained for the defendant by the prosecution and conviction itself. The personal and reputational consequences the defendant has suffered are more than sufficient to discourage him from engaging in similar conduct. Mr. Prenzlin has led a crime-free life.

As for general deterrence, several observations can be made. First, the prosecution itself (and the publicity of conviction) all serve as a significant general deterrence. *See, e.g. Wayte v. United States*, 470 U.S. 598, 607 (1985) (observing that any prosecution has a "general deterrence value"); *United States v. Gamarra*, 940 F.3d 1315, 1321 (D.C. Cir. 2019) (observing that prosecution itself provides general deterrence). If that is true generally, it is especially true here.

The misdemeanor charges in this case received national and local press.[7] There is every indication the public flogging of the Defendant by the media will continue for the foreseeable future. Unlike almost any other federal misdemeanor charge (besides other Defendants in January 6 cases), no one in their right mind would expose themselves to the level of vitriol that the media is heaping upon all January 6 Defendants – regardless of the level of their participation or the severity of their particular charges. The point of this observation is that the publicity involved in these cases is itself providing significant general deterrence unlike any run of the mill federal misdemeanor case. It might also be observed that google and the articles on this matter will last Mr. Prenzlin until the day he dies. When whatever sentence this Court imposes is served out, the headlines will remain. January 6, 2021 will be a day that lives in infamy, and, for those who entered the Capitol it will be a lifelong stain on their names.

Second, while the events of January 6, 2021 were unacceptable by any measure, and must be deterred from ever occurring again, it would be inappropriate to treat every participant in that event equal, without regard to the circumstances of their involvement, and without regard to the cooperation

---

[7] https://lawandcrime.com/u-s-capitol-siege/if-the-shoe-fits-distinctive-navy-blue-footwear-leads-feds-to-freedomworks-grassroots-coordinator-charged-in-jan-6/ (last visited 6/2/2022); https://www.wusa9.com/article/news/national/capitol-riots/conservative-organizer-brandon-prenzlin-charged-with-4-misdemeanors-in-capitol-riot-freedomworks/65-3e97a0d9-c9ee-41e4-a540-573d7df3474f  (last visited 6/2/2022); https://www.washingtontimes.com/news/2021/sep/24/brandon-prenzlin-former-freedomworks-staffer-charg/  (last visited 6/2/2022).

and acceptance of responsibility they exhibited afterwards.

Indeed, as observed by the district court in the Supreme Court's decision in *Gall v. United States*, probation (or post-release supervision), "rather than an act of leniency, is a substantial restriction of freedom." 552 U.S. 38, 44 (2007) (internal quotation marks omitted). The *Gall* Court emphasized that the defendant would have to "comply with strict reporting conditions." *Id.* The Court also noted that the defendant would "not be able to change or make decisions about significant circumstances in his life, such as where to live or work, which are prized liberty interests, without first seeking authorization from his Probation Officer or, perhaps, even the Court." *Id.*

Given the facts of this case as weighed by the statutory factors, a probationary sentence in this case is "sufficient, but not greater than necessary, to comply with the purposes" of sentencing.

### E.     Sentencing Disparities

It is difficult to find any particular set of facts that is right on point. Even within the misdemeanor charges and sentences, there is only two Defendants that we could find who spent less than 15 minutes inside the Capitol (much less the less than the 4 minutes Mr. Prenzlin spent), and, as discussed below, the facts of that matter are markedly different than this matter. We submit that Mr. Prenzlin's limited time inside the hallway and immediate exit upon the directives of law enforcement is less culpable than the Defendant in *United States v. Blauser*, 1:21-CR-386, who received a $500 fine and $500 in restitution.[8] Mr. Prenzlin's limited time (less than 4 minutes) inside the Capitol, lack of any aggravating factors, and immediate compliance with law enforcement directives to leave, is less egregious and less culpable than the Defendants in *United States v. Doyle*, 1:21-CR-324

---

[8] We recognize that Mr. Blauser was inside the Capitol, in part, to protect his companion that day, but he spent almost an hour in the Capitol, made provocative statements, and had interactions with law enforcement that were not cooperative, compared to less than 4 minutes in the Capitol and immediately complying with law enforcement directives to leave, as was the case with Mr. Prenzlin.

(sentenced to 2 months' probation, $3,000 fine, and $500 in restitution); *United States v. Eliel,* 1:21-CR-68 (12 months' probation, 100 hours community service, $500 in restitution); *United States v. Cordon*, 1:21-CR-269 (2 months' probation, $4,000 fine, $500 in restitution); *United States v. Pert*, 1:21-CR-139 (24 months' probation, 100 hours community service, $500 in restitution); *United States v. Hiles*, 1:21-CR-00155 (24 months' probation, 60 hours community service, $500 in restitution); *United States v. Wagner*, 1:21-CR-00363 (24 months' probation, 60 hours community service, $500 in restitution); or *United States v. Harrison*, 1:21-CR-00365 (24 months' probation, 60 hours community service, $500 in restitution).

However, when it comes to the above cases, as here, we have a Defendant who did not engage in any preplanning or coordination prior to his entry into the Capitol. In the references cases above, as here, we have a Defendant who did not personally engage in acts of violence or destruction of property, or incite the same. In those cases, as here, we have a Defendant who only remained in the Capitol for a brief period of time and in a limited area of the building. In those cases, as here, we have a Defendant who cooperated with law enforcement at the time of arrest, including submitting to a voluntary interview and search of his cellphone. In those cases, as here, we have a Defendant who timely admitted to his actions and accepted responsibility. Thus, as here, a sentence of probation or a fine (along with the agreed-to restitution of $500 to the United States) is appropriate.

The undersigned undertook some analysis of this Court's prior January 6 misdemeanor sentences for comparison purposes. First, we looked at other 40 U.S.C. § 5104(e)(2)(G) guilty pleas. Those cases include *Blauser*, 1:21-CR-386-TNM, who received a $500 fine and $500 in restitution.

It also includes *United States v. Doyle*, 1:21-CR-324-TNM, who received 2 months' probation, a $3,000 fine, and $500 in restitution. The Defendant in *Doyle*: (i) spent 24 minutes in the Capitol (8 times longer than Mr. Prenzlin), chanted and yelled (Mr. Prenzlin did neither), (ii)

11

photographed the destruction (Mr. Prenzlin did not), (iii) climbed through a broken window (versus through an open door as Mr. Prenzlin did), yelled in the direction of law enforcement (versus leaving the Capitol and being respectful to law enforcement, as Mr. Prenzlin did), (iv) visited areas throughout the Capitol including statutory hall, walked upstairs to the Rotunda, went down the crypt, and accessed other areas of the Capitol (versus the hallway Mr. Prenzlin entered). *See* Government Sentencing Memoranda, Doc. 27, *U.S. v. Doyle*, 1:21-cr-00324-TNM. The Government in that case did not ask for incarceration: it asked for two months home confinement, three years of probation, 60 hours of community service, and $500 in restitution. *Id.*

It also includes *United States v. Rosa*, 1:21-CR-68-TNM, who received 12 months' probation, 100 hours of community service, and $500 in restitution. The Defendant in *Rosa* did voluntarily contact the FBI and admit to his involvement days after January 6, but (i) he spent over 20 minutes in the Capitol (almost seven times as long as Mr. Prenzlin); (ii) proceeded through a hallway door and then to the Rotunda (versus the hallway Mr. Prenzlin entered); and (iii) documented his activities online after, showing he was proud of what he had done (Mr. Prenzlin did none of this). *See* Government Sentencing Memoranda, Doc. 66, *U.S. v. Rosa*, 1:21-cr-0068-TNM. Again, the Government did not ask for incarceration, it instead sought one month of home confinement, a probationary term of three years, 60 hours of community service, and $500 in restitution. *Id.*

It also includes *United States v. Ericson*, 1:21-CR-506-TNM, who received 20 days incarceration, 24 months of probation, and $500 in restitution. In that case, the Defendant (i) penetrated the U.S. Capitol all the way to the Speaker's conference room and office space (as opposed to accessing a limited hallway); (ii) cheered as the Capitol was breeched and encouraged others (Mr. Prenzlin did not); (iii) spent more than 30 minutes inside the Capitol (versus less than 4 minutes); (iv) posted to social media with his feet on the Speaker's conference room table and taking a beer out of

12

a mini refrigerator; (v) recorded his presence in and around the Capitol and posted it on Snapchat while cheering on the criminal activity he was witnessing. *See* Government Sentencing Memoranda, Doc. 37, *U.S. v. Ericson*, 1:21-cr-0506-TNM. In that case, the Government asked for 60 days of incarceration and $500 in restitution. *Id.*

This Court also sentenced several J6 Defendants for more serious 18 U.S.C. 1752(a) charges. Those cases include *United States v. Winn*, 1:21-CR-139-TNM, in which the Court sentenced the Defendant to 10 days incarceration, 12 months' probation, 100 hours community service, and $500 restitution. In that case, the Defendant: (i) posted on Facebook Live his awareness violence may be afoot prior to entry (there are no such posts here by Mr. Prenzlin); (ii) shortly after defendant exited the building, he did not immediately leave Capitol grounds or otherwise comply with law enforcement (as opposed to Mr. Prenzlin who immediately complied with law enforcement and left); (iii) remained in the Capitol for over 35 minutes (more than 9 times longer than Mr. Prenzlin); (iv) accessed multiple portions of the building, to include the Rotunda and Statuary Hall (as opposed to Mr. Prenzlin who accessed a side hallway and then left); (v) were tear gassed by law enforcement and bragged about it (Mr. Prenzlin did none of that). *See* Government Sentencing Memoranda, Doc. 50, *U.S. v. Winn*, 1:21-cr-0139-TNM. In that case, the Government asked for three months home confinement, 24 months of probation, forty hours of community service, and $500 in restitution. *Id.* The Court found that Winn was, as compared to his co-Defendant, egging on the behavior, justifying the brief period of incarceration.

Winn's co-Defendant, Pert, was also sentenced by this Court in *United States v. Winn*, 1:21-CR-139-TNM, in which the Court sentenced the Defendant to 24 months' probation, 100 hours community service, and $500 restitution. In that case, the Defendant: (i) posted on Facebook Live her awareness violence may be afoot prior to entry (there are no such posts here by Mr. Prenzlin); (ii)

shortly after defendant exited the building, she did not immediately leave Capitol grounds or otherwise comply with law enforcement (as opposed to Mr. Prenzlin who immediately complied with law enforcement and left); (iii) remained in the Capitol for over 35 minutes (more than 9 times longer than Mr. Prenzlin); (iv) accessed multiple portions of the building, to include the Rotunda and Statuary Hall (as opposed to Mr. Prenzlin who accessed a side hallway and then left); (v) were tear gassed by law enforcement and bragged about it (Mr. Prenzlin did none of that). *See* Government Sentencing Memoranda, Doc. 49, *U.S. v. Winn*, 1:21-cr-0139-TNM. In that case, the Government asked for three months home confinement, 24 months of probation, forty hours of community service, and $500 in restitution. *Id.*

And, finally, *United States v. Cordon*, 1:21-CR-269-TNM, in which this Court imposed a sentence of 2 months' probation, a $4000 fine, and $500 in restitution. In that case, the Defendant: (i) came prepared for violence, including by wearing body armor and a gas mask; (ii) climbed through a broken window to access the Capitol; (iii) accessed various areas of the Capitol, including the crypt; (iii) was in the Capitol a little over five minutes; and (iv) gave media interviews after exiting the Capitol bragging about their activities. *See* Government Sentencing Memoranda, Doc. 49, *U.S. v. Cordon*, 1:21-cr-0269-TNM. In that case, the Government asked for three years' probation, sixty hours of community service, and $500 in restitution. *Id.*

In terms of time in the Capitol, *Cordon* is most on point to this case (though Mr. Prenzlin was in the Capitol only 3 and a half minutes, as opposed to the five that Mr. Cordon was). But Mr. Cordon plead to more serious charges, carrying the potential of a year of incarceration, and a potential fine of $100,000. And Mr. Cordon's actions were more egregious: he came prepared to engage in violence with body armor and a gas mask (Mr. Prenzlin did not), climbed through a broken window (Mr. Prenzlin entered through an open door), Mr. Cordon gave media interviews bragging about his

14

activities (Mr. Prenzlin did not), Mr. Cordon entered the Capitol early in the breach as opposed to late in the breach as Mr. Prenzlin did.

On balance, we submit that, as in *Blauser*, 1:21-CR-386, who received a $500 fine and $500 in restitution, a $500 fine and $500 in restitution is appropriate here.

If this Court believes some period of supervision is required, we submit that the Court should impose upon Mr. Prenzlin a sentence of probation of four months (one month for each minute, or part thereof, that he was inside the Capitol), twelve hours of community service (three hours for each minute, or part thereof, that he was inside the Capitol), and $500 in restitution as he agreed to.

Some mention should be made of the Government's request for incarceration here and its sentencing memoranda. It is impossible to square that request with prior requests by the Government for January 6 misdemeanor Defendants that involved *more time* spent in the Capitol and *more egregious* facts and conduct, where the Government did not include a request for incarceration, including Defendants Cordon, Winn, Pert, Doyle, and Rosa. That is particularly the case here given the extraordinarily limited period of time that Mr. Prenzlin was actually in the Capitol followed by his adherence to law enforcement directives to leave. In reading the Government's sentencing memoranda, one cannot help but draw the conclusion that its request for incarceration here is due to Mr. Prenzlin's past history of successfully aiding conservatives in elections. *See* Gov't Mem. at 1 (D.E. 30) (labeling Mr. Prenzlin as "a political organizer").

In fact, in *United States v. Julia Sizer*, 21-CR-621, the *same* assigned prosecutor in this case, filed a sentencing memorandum for a Defendant charged with the *same* offense as Mr. Prenzlin and who was also alleged to have been in the Capitol for only a few minutes and purportedly mislead the FBI (the *same* allegations raised as to Mr. Prenzlin). *See United States v. Sizer*, 21-CR-621 at D.E. 26, pp. 1-2. Unlike Mr. Prenzlin, in that case, the Government also alleged that Ms. Sizer "recorded

video on her cellphone depicting scores of rioters that had overwhelmed law enforcement" and "shared this video with others via private message." The Government, however, did not ask for incarceration for Ms. Sizer — not a single day. In fact, the Government limited its allocution to home confinement and probation. Notwithstanding both sentencing memoranda contained the same proforma language that both individuals participated in a violent attack, the only respective difference between the two is that Ms. Sizer was "a nail salon owner" and Mr. Prenzlin is characterized as "a political organizer."

Beyond appearing to be blatant First Amendment retaliation, such considerations are wholly inappropriate. Regardless, just as Judge Christopher R. Cooper rejected the Government's request for home confinement for Ms. Sizer, this Court should reject the Government's request for incarceration for Mr. Prenzlin.

The Government argues that a sentence of incarceration is appropriate (along with its request for probation in addition), for five reasons. The first three are present in *each and every case* where a J6 Defendant pleas or is found guilty, namely: (1) Mr. Prenzlin admitted he knew should not have been in the Capitol; (2) he knew access to the Capitol was restricted; and (3) there was chaos afoot on January 6. (Memo, Doc. 30 at 2, 17-20). There will never be a J6 Defendant who *does not have* each of these factors present.

Next, the Government alleges that Mr. Prenzlin's brief discussion with the FBI suggests some sort of nefarious cover-up warranting incarceration. The discussion itself reveals nothing of the sort, and it is clear within minutes, that Mr. Prenzlin admits to going up the steps and into the hallway. And, finally, the Government seizes upon Mr. Prenzlin missing a couple telephone reports satisfying conditions of his release; Mr. Prenzlin admits to forgetting to make the calls and offers no excuses.

However, that hardly warrants the significant penalty the Government seeks to exact here.[9]  If the Court does impose a sentence of incarceration, we will ask for a serve-out on weekends, self-surrender, and a serve-out in facilities within the Northern District of Ohio.

## V.      Conclusion

For all these reasons, Mr. Prenzlin asks this Court to impose a non-incarceration sentence in this matter, to order the agreed-to sentence of restitution, and such other sentence as this Court finds to be a just, fair, and reasonable resolution of this matter.

| | |
|---|---|
| Dated: June 21, 2022 | Respectfully submitted, |
| | /s/ Christopher Wiest |
| | Christopher Wiest (DCD KY 002) |
| | 25 Town Center Blvd, Ste. 104 |
| | Crestview Hills, Kentucky 41017 |
| | Telephone: (513) 257-1895 |
| | Facsimile:  (859) 495-0803 |
| | Email: chris@cwiestlaw.com |
| | |
| | s/ Christopher Macchiaroli |
| | Christopher Macchiaroli (D.C. Bar No. 491825) |
| | Silverman, Thompson, Slutkin & White LLC |
| | 1750 K Street, NW, Suite 810 |
| | Washington, D.C. 20006 |
| | Telephone: (202) 539-2444 |
| | Facsimile:  (410) 547-2432 |
| | Email: cmacchiaroli@silvermanthompson.com |
| | |
| | *Counsel for Defendant Brandon Prenzlin* |

---

[9] The Government has also asked for a so-called "split sentence."  We have attached hereto, an Amicus Brief by the Federal Public Defender that demonstrates a probationary sentence may not be imposed with a incarceration sentence.  We incorporate that brief by reference.

17